Jerry NEESE, Mrs. Jerry Neese, Earl William Neese, Neese Printing Co., d/b/a Mid-State Newspapers, Inc., M. Dale Palmer, Harlan H. Hinkle, Appellants-Defendants,

v.

Don J. RICHER, individually and as a representative of the shareholders of Mid-State Newspapers, Inc., and in a derivative capacity acting for said Mid-State Newspapers, Inc. an Indiana Corporation, Appellee-Plaintiff.

No. 1–1280A348.

Court of Appeals of Indiana, First District.

Nov. 23, 1981.

Rehearing Denied Dec. 22, 1981.

John E. Pierce, Palmer, Kinkle, Keck & Webb, Danville, for appellants-defendants.

Arthur H. Northrup, Indianapolis, for appellee-plaintiff.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Defendants-appellants appeal from a judgment of the Montgomery Circuit Court which found that plaintiff, Don J. Richer (Richer), failed to prove the appellants were guilty of mismanagement, fraud or conversion of assets; that Richer was justified in bringing an action for accounting, which was made; and that defendant Mid-States Newspapers, Inc. pay plaintiff's expenses incurred in bringing the action, costs of the action, and the fees of George S. Olive and Company who did the accounting ordered by the court. We affirm.

## STATEMENT OF THE FACTS

Richer brought a shareholder derivative action for an accounting and damages, alleging the corporation had been mismanaged, records had been falsified, income misstated, and corporate funds converted to the directors' personal use. After a bench trial, Judge Milligan of the Montgomery Circuit Court ordered an audit of the corporation's books by an independent accounting firm, George S. Olive and Company. The appellants objected to the order and their objection was overruled. Appellants then brought an original action in our supreme court for a writ of mandate and prohibition to prevent Judge Milligan from acting in connection with the order of the independent accounting. Appellants' petition for writ of mandate and prohibition was denied by the Indiana Supreme Court in *State ex rel. Neese v. Montgomery Circuit Court*, (1980) Ind., 399 N.E.2d 375.

After the receipt of the independent accountant's report, the trial court entered its judgment finding that although certain acts by the appellants were improper, Richer had failed to prove appellants were guilty of fraud, mismanagement, or conversion of corporate assets. The trial court also found

the corporation failed to keep correct and complete financial books and records of account as required by Ind.Code 23–1–2–14 [1] and that the books and records were sufficiently incomplete and the business dealings between Jerry Neese, Marcia Neese, and Mid-States Newspapers, Inc. were sufficiently susceptible of an interpretation of wrongdoing that Richer was justified in bringing the action for accounting. Thus, the trial court ordered Mid-States Newspapers, Inc. to pay Richer's expenses of three thousand one hundred dollars, the costs of the action, and three thousand nine hundred seventy five dollars to George S. Olive for the independent accounting ordered by the court.

## ISSUE

Appellants present the following issue for our consideration: "The sole question before this court is whether the trial court erred in awarding attorney['s] fees and expenses to an unsuccessful plaintiff in a derivative shareholder action."

## DISCUSSION AND DECISION

Appellants request us to reverse the trial court's judgment which orders Mid-States Newspapers, Inc. to pay the expense of the court ordered accounting, Richer's attorney's fees, and Richer's accountant's fees. They state that although a plaintiff in Indiana may recover attorney's fees and expenses of litigation in a shareholder derivative action, Richer is not entitled to payment of his attorney's fees and expenses because he was not successful in the litigation and the corporation did not receive a pecuniary benefit as a result of the action. Richer counters that the accounting was a benefit to Mid-States Newspapers since it brought Mid-States Newspapers into compliance with the statutory requirement of adequate accounting.

The trial court in this case entered special findings of fact pursuant to Ind.Rules of Procedure, Trial Rule 52(A). Thus, we will not reverse the findings or judgment of the trial court unless clearly erroneous. *Seco Chemicals, Inc. v. Stewart,* (1976) 169 Ind. App. 624, 349 N.E.2d 733.

First, we will address appellants' argument that the trial court erred in ordering Mid-States Newspapers to pay the expense of the independent accounting. In *Atwood v. Prairie Village, Inc.,* (1980) Ind.App., 401 N.E.2d 97, a shareholder brought an action against the corporation, its officers, and other shareholders for an accounting and a judgment against the defendants for an amount found to be due him as a result of such accounting. The trial court ordered an audit of the corporation's books and then subsequently entered summary judgment for the defendants on the basis of a release signed by the plaintiff, Atwood. On appeal the plaintiff alleged the trial court erred in assessing against him the fee of the court-appointed accountants. In determining that the trial court did not err in assessing the fee against the plaintiff, Judge Hoffman stated:

"An action to require an accounting is equitable in nature and has for its purpose the striking of a balance between parties in a fiduciary relationship with each other and enforcing payment of the difference, if any, to the party entitled thereto. *State, ex rel. Neese et al. v. Montgomery Circuit Court et al.* (1980), Ind., 399 N.E.2d 375; *Gaines Bros. Co. v. Gaines* (1940) 188 Okl. 300, 108 P.2d 177; *Hays v. Cowles* (1943) 60 Cal.App.2d 514, 141 P.2d 26; Black's Law Dictionary 18 (5th ed. 1979). Except to the extent that they are controlled by statute or rule, the allowance of costs in a suit of equity is within the discretion of the trial court and the exercise of such discretion cannot be interfered with unless it is manifestly abused. *Estrin v. Fromsky* (1942) 53 Cal. App.2d 253, 127 P.2d 603; 20 C.J.S. Costs § 10 (1940).

Neither party has cited nor has independent research disclosed any statute governing the assessment of fees for an audit ordered by a court in an accounting

1. Ind.Code 23–1–2–14 provides in part: "Each corporation shall keep correct and complete books of account and minutes of proceedings of its shareholders and directors."

action. Therefore, it follows that since this was a suit in equity it was within the discretion of the trial court to determine how the costs ought to be taxed."

*Id.* at 100–101.

■ The trial court in the present case in exercising its discretion assessed the cost of the independent accounting against Mid-States Newspapers. We do not find such action on the part of the trial court to be an abuse of discretion in light of the court's findings that the corporation's accounting procedures were sloppy, disorganized, and extremely difficult to follow in an attempt to substantiate and reconcile the accounts and records that were available to the court.

Turning now to appellants' contention that the trial court erred in awarding attorney's and accountant's fees to Richer, we note that a shareholder's right to recover attorney's fees and expenses of litigation in a shareholder derivative suit has been recognized in Indiana. *See Cole Real Estate Corp. v. Peoples Bank & Trust Co.,* (1974) 160 Ind.App. 88, 310 N.E.2d 275, *trans. denied; Princeton Coal & Mining Co. v. Gilchrist,* (1912) 51 Ind.App. 216, 99 N.E. 426. This rule is supported by two important policies. First, to allow all shareholders to benefit equally from the plaintiff's efforts without contributing to the litigation expenses would unjustly enrich them at the expense of the plaintiff. Second, the reimbursement of attorney's fees and expenses encourages meritorious derivative suits by shareholders whose expenses in bringing the suits would normally exceed any increase in the value of their holdings resulting from the suit. 13 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 6044 (rev.perm. ed.1980).

■ Appellants argue that this rule is not applicable to the present case because Richer was not successful in his shareholder derivative suit since the trial court found against him on the issues of mismanage-

ment, fraud, or conversion of assets. We disagree. Appellants' argument ignores the trial court's Finding of Fact No. 15 that Richer should recover on his request for an accounting and such an accounting was made. Thus, contrary to appellants' contention, Richer was successful in his derivative action.[2]

Next, appellants argue Richer should not recover his expenses because there was no pecuniary benefit derived by the corporation from the suit. Richer, on the other hand, contends the independent accounting of the corporation was a sufficient non-pecuniary benefit to allow the court to award him his expenses.

The issue of whether a non-pecuniary benefit to the corporation is sufficient to allow recovery of attorney's fees has not been decided in Indiana. However, courts of other jurisdictions have recognized that a non-pecuniary benefit may be sufficient. *See Mills v. Electric Auto-Lite Co.,* (1970) 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593; *Bailey v. Meister Brau, Inc.,* (7th Cir. 1976) 535 F.2d 982; *Schechtman v. Wolfson,* (2d Cir. 1957) 244 F.2d 537; *Lewis v. Anderson,* (C.D.Calif.1981) 509 F.Supp. 232; *United Operating Co. v. Karnes,* (S.D.N.Y.1980) 482 F.Supp. 1029; *Fletcher v. A. J. Industries, Inc.,* (1968) 266 Cal.App.2d 313, 72 Cal.Rptr. 146; *Grant v. Hartman Ranch Co.,* (1961) 193 Cal.App.2d 497, 14 Cal.Rptr. 531; *Yap v. Wah Yen Ki Tuk,* (1958) 43 Hawaii 37; *Holden v. Construction Machinery Co.,* (1972) Iowa, 202 N.W.2d 348; *Berger v. Amana Society,* (1965) 257 Iowa 956, 135 N.W.2d 618; *Bosch v. Meeker Cooperative Light & Power Association,* (1960) 257 Minn. 362, 101 N.W.2d 423; *McDaniel v. Frisco Employees' Hospital Association* (1974) Mo. App., 510 S.W.2d 752; *Abrams v. Textile Realty Corp.,* (1949) Sup.Ct., 97 N.Y.S.2d 492; *Modern Optics, Inc. v. Buck,* (1960) Texas Civ.App., 336 S.W.2d 857; *Comment, Attorneys' Fees in Shareholder Derivative Suits: The Substantial Benefit Rule Reex-*

2. For purposes of this appeal, we assume the action for accounting was a derivative action and not a personal action by Richer since the appellants have characterized this suit as a derivative action and have not contended otherwise in their appellate brief submitted to this court.

*amined,* 60 Calif.L.R. 164 (1972); Annot. 39 A.L.R.2d 587 (1955); *cf., Seattle Trust & Savings Bank v. McCarthy,* (1980) 94 Wash.2d 605, 617 P.2d 1023 (minority shareholder who opposed declaratory judgment action brought by corporation was awarded his attorney's fees on appeal because his opposition benefited the corporation and because plaintiff voluntarily paid his fees at trial level, apparently recognizing the fairness of his action).

In *Mills v. Electric Auto-Lite Co., supra,* the plaintiffs alleged, both derivatively on behalf of Auto-Lite and as representatives of the class of all its minority shareholders, that the proxy solicitation for the merger of Auto-Lite and the Mergenthaler Linotype Co. was materially misleading and violated § 14(a) of the Securities Exchange Act of 1934. The United States Supreme Court affirmed the decision of the district court that the corporation had violated the securities laws and entered an interim award of litigation expenses and reasonable attorneys' fees to the plaintiffs. In awarding attorneys' fees, the court discussed the trend of awarding such fees when a non-pecuniary benefit was conferred upon the corporation as a result of the action.

"While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. See *Fleischmann Corp. v. Maier Brewing Co.,* 386 U.S. [714] at 718–719 [, 87 S.Ct. 1404 at 1407–08, 18 L.Ed.2d 475]. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense. This suit presents such a situation. The dissemination of misleading proxy solicitations was a 'deceit practiced on the stockholders as a group,' *J. I. Case Co. v. Borak,* 377 U.S. [426] at 432 [,84 S.Ct. 1555 at 1559, 12 L.Ed.2d 423], and the expenses of petitioners' lawsuit have been incurred for the benefit of the corporation and the other shareholders.

The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses. . . .

Other cases have departed further from the traditional metes and bounds of the doctrine, to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. This development has been most pronounced in shareholders' derivative actions, where the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor. For example, awards have been sustained in suits by stockholders complaining that shares of their corporation had been issued wrongfully for an inadequate consideration. A successful suit of this type, resulting in cancellation of the shares, does not bring a fund into court or add to the assets of the corporation, but it does benefit the holders of the remaining shares by enhancing their value. Similarly, holders of voting trust certificates have been allowed reimbursement of their expenses

from the corporation where they succeeded in terminating the voting trust and obtaining for all certificate holders the right to vote their shares. In these cases there was a 'common fund' only in the sense that the court's jurisdiction over the corporation as nominal defendant made it possible to assess fees against all of the shareholders through an award against the corporation.

In many of these instances the benefit conferred is capable of expression in monetary terms, if only by estimating the increase in market value of the shares attributable to the successful litigation. However, an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature. . . .

In many suits under § 14(a), particularly where the violation does not relate to the terms of the transaction for which proxies are solicited, it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders. Cf. *Bakery Workers Union v. Ratner*, 118 U.S.App.D.C. 269, 274, 335 F.2d 691, 696 (1964). Whether petitioners are successful in showing a need for significant relief may be a factor in determining whether a further award should later be made. But regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute. To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." (Footnotes omitted.)

396 U.S. at 391–97, 90 S.Ct. at 625–28, 24 L.Ed.2d at 606–609.

Similarly, in *Bosch v. Meeker Cooperative Light & Power Association, supra,* the plaintiff-shareholder brought a derivative action alleging that a purported election of directors and a proposed amendment to the corporate bylaws were illegal. The trial court found for the plaintiff, but denied reimbursement of the plaintiff's attorney's fees because no pecuniary benefit to the corporation was realized as a result of the action. The Minnesota Supreme Court in reversing the trial court's finding on the issue of attorney's fees stated:

"It should be conceded that where a corporation stands to suffer loss if some action is not taken to protect its interests and those in authority fail or refuse to act a stockholder may proceed on behalf of the corporation without incurring personal expense. Since the corporation is the beneficiary of the recovery of funds or of the corrective benefit of the action, it should stand the expense of it. It should further be conceded that there may be stockholder's actions which do not result in the creation of cash funds or in the protection or conservation of corporate assets, but which nevertheless result in a correction or straightening out of corporate affairs, so as to provide a substantial benefit which will warrant recovery of costs and attorneys' fees. Annotations, 152 A.L.R. 921 and 39 A.L.R.2d 587.

In *Schechtman v. Wolfson*, 2 Cir., 244 F.2d 537, 540, Chief Judge Clark stated:

"* * * The modern equity practice is to allow counsel fees to successful prosecutors of derivative suits although no judgment has been obtained if they show substantial benefit to the corporation through their efforts, * * * [citations]. Nor is it necessary that a cash fund be produced. * * * [Citations.] But there should be some check on derivative actions lest they be purely strike suits of great nuisance and no affirmative good, and hence it is ruled generally that *the benefit to the corpo-*

*ration and the general body of shareholders must be substantial.'* (Italics supplied.)

It should be recognized that to grant an award of fees and expenditures against a corporation in every instance where the officers of the corporation act outside of their corporate powers would be to invite and encourage certain actions intended not to redress real wrongs but to realize upon their nuisance value. Nevertheless, it would be unrealistic to deny that derivative suits instituted in good faith to correct or prevent misconduct of corporate officers and directors may be of substantial benefit. Commitment by officers of a corporation to ultra vires acts, contracts, or obligations may entail hazards to the corporation, its stockholders, and creditors. Actions to prevent such acts may maintain the health of the corporation and raise the standards of 'fiduciary relationships and of other economic behavior.' Hornstein, *Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards,* 69 Harv.L.Rev. 658, 663. In the face of unwise, arbitrary, or unreasonable ultra vires acts or conduct of corporate officers which would be harmful to the interests of the corporation, a stockholder should be permitted to prosecute a suit to redress a wrong or prevent a threatened wrong to his corporation even though such action might not result in 'pecuniary benefit.' To assure the stockholder that he will not be required personally to pay the entire costs of suit in the event he prevails is not too much of an inducement for him to take the initiative to challenge questionable act. Hornstein, *The Counsel Fee in Stockholder's Derivative Suits,* 39 Col.L. Rev. 784, 791. Such actions may have a wholesome effect on the corporate management in keeping it within the limits of its legal responsibility and at the same time act as a deterrent to arbitrary, unreasonable, and harmful managerial conduct. Where an action by a stockholder results in a substantial benefit to a corporation he should recover his costs and expenses. As to what is a 'substantial benefit' is for the trial court to determine in the light of the facts and circumstances of the particular case. Without attempting in any way to define the term or circumscribe its application, we would say that a substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." (Footnote omitted.)

257 Minn. at 364–67, 101 N.W.2d at 426–27.

■ We agree with the United States Supreme Court and Minnesota Supreme Court and hold that a non-pecuniary benefit to the corporation may be sufficient to award attorney's fees and expenses to a minority shareholder who brings a derivative action. The non-pecuniary benefit to the corporation must be a substantial benefit. Whether such a benefit exists is a question of fact to be determined by the trial court; however, the benefit must be one which "maintain[s] the health of the corporation and raise[s] the standards of 'fiduciary relationships and of other economic behavior' " or which "corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect[s] the enjoyment or protection of an essential right to the stockholder's interest." *Bosch v. Meeker Cooperative Light & Power Association,* (1960) 257 Minn. 362, 365–67, 101 N.W.2d 423, 426–27; *accord, Fletcher v. A. J. Industries, Inc.,* (1968) 266 Cal.App.2d 313, 72 Cal.Rptr. 146. To hold otherwise would effectively foreclose a minority shareholder from bringing a derivative action to redress the actions of corporate directors or officers which would be harmful to the corporation when the derivative action did not result in a pecuniary benefit to the corporation since the minority shareholder alone would be accountable for the burdensome litigation expenses. Thus, without the allowance of attorney's fees and expenses to a minority shareholder in a derivative action which results in a non-pecuniary benefit to the corporation,

many wilful or fraudulent breaches of trust or ultra vires acts would go uncorrected.

In the present case, the trial court in overruling appellants' motion to correct errors made additional findings of fact that the corporation could receive benefits from the independent accounting requested by plaintiff. We agree that the independent accounting was a substantial benefit to the corporation. The financial books and records of account were kept in such a sloppy, incomplete, and disorganized manner that the trial court found the corporation had failed to keep correct and complete financial books and records of account. The Indiana General Corporations Act, Ind.Code 23–1–1–1 to 23–1–12–6, provides that a corporation "shall keep correct and complete books of accounts." Ind.Code 23–1–2–14. Further, it provides in Ind.Code 23–1–10–1 that a corporation which fails to do any act required to be done by its provisions commits a class B infraction. Thus, the independent accounting ordered by the court brought the corporation within the provisions of the Indiana General Corporations Act and maintained the health of the corporation by providing a complete and accurate financial record of the corporation.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.