**John T. SCOTT and Lucinda Shafer, Plaintiffs, Counterdefendants, Appellants and Cross-Appellees,**

**v.**

**ANDERSON NEWSPAPERS, INC., Robert E. Jackson, Charles Laughlin, Joe Murdock and Willis D. Crittenberger, Jr., Defendants, Counterclaimants, Appellees and Cross-Appellants.**

**No. 4–583A158.**

Court of Appeals of Indiana, Fourth District.

April 29, 1985.

Rehearing Denied June 19, 1985.

---

Yes."

John R. Van Winkle, John P. Price, Grace M. Curry, Bingham Summers Welsh & Spilman, Indianapolis, for plaintiffs, counterdefendants, appellants and cross-appellees.

John W. Houghton, James E. Mahoney, Barnes & Thornburg, Indianapolis, George B. Davis, Davis & Davis, Greenfield, for defendants, counterclaimants, appellees and cross-appellants.

CONOVER, Judge.

Plaintiffs counter-defendants, appellants, cross-appellees John T. Scott and Lucinda Shafer (The Herald Group) appeal certain holdings of the Hancock Superior Court in a declaratory judgment action. Defendants, counter-claimants, appellees, cross-appellants Anderson Newspapers, Inc. (ANI) and Jackson, Laughlin, Murdock and Crittenburger, Jr., directors (the Bulletin Group), cross-appeal certain holdings therein.

Affirmed in part, reversed in part, and remanded with instructions.

ISSUES

Restated, this appeal/cross-appeal presents the following ultimate issues:

A. *The Herald Group's Issues:*

1. Whether the Herald Group's preemptive right to "print, publish and distribute" the Herald "as before the consolidation" contained in the agreement of consolidation prohibits the amendment of the articles so as to extinguish such right by simple majority vote of ANI shareholders.

2. Whether the ANI by-laws may be amended by simple majority vote of the ANI board of directors.

3. Whether ANI can recover $325.48 from Scott for unauthorized telephone calls.

B. *The Bulletin Group's Issues:*

1. Whether the trial court erred by imposing restrictions on ANI's right under the Indiana General Corporation Act (IGCA) requiring amendments of its articles of consolidation (articles) and by-laws by other than simple majority vote.

2. Whether the trial court erred by vesting in the Herald Group the perpetual right to select ANI's vice-president, the editor of the Herald, and three of ANI's directors.

3. Whether the trial court erred by holding this suit is a derivative action warranting recovery of attorneys' fees and expenses by the Herald Group.

4. Whether the trial court erred by awarding the Herald Group $122,818.12 attorneys' fees and expenses to be paid by ANI.

5. Whether the trial court erred by denying ANI recovery of money paid to Scott and reimbursement for long distance telephone calls charged by him while he acted as Herald interim editor under a court order subsequently vacated.

## FACTS

Prior to and since 1949, two newspapers were and are published in Anderson, Indiana, the Bulletin and the Herald. The Herald has the larger circulation. Originally, they were owned and operated by separate corporations. In 1949, however, the corporations and their stockholders duly approved and executed an agreement of consolidation, Anderson Newspapers, Inc. (ANI) being the new corporation resulting from that consolidation. Since that time, there has been no difficulty in tracing Bulletin and Herald-generated ANI shares to current stockholders. For easy reference, we shall call these two groups the Bulletin Group, ANI majority stockholders, and the Herald Group, ANI minority stockholders.

When ANI stock was issued, the two groups of shareholders were issued stock in proportion to the contributions each of the corporations made to the assets of the new corporation, as provided by ANI's Articles. This proportional ownership of stock has been maintained to date, the Bulletin Group now owning 4,738 shares of ANI [53.25%], and the Herald Group currenting owning 4,160 shares [46.75%]. ANI's articles and by-laws originally provided three ANI directors would come from the Bulletin Group and two ANI directors would come from the Herald Group. Later amendments raised the total number of directors to 7, 4 to be Bulletin and 3 to be Herald directors.

Prior to the events which precipitated this litigation, each group nominated its own directors annually, but they were elected by majority vote of all ANI shareholders. The directors annually elected ANI's president and secretary from the Bulletin Group directors and the vice-president from the Herald's. Each group of directors appointed the editor of its own newspaper.

John E. Scott, ANI Vice-President and founder of the Herald newspaper died in 1981. After John's death, his son, John T., acted as interim editor of the Herald, but without authority from ANI's board. It never did appoint an editor of the Herald,

and it would not have had an editor but for John T.'s voluntary assumption of the editorship. He was paid the same weekly sum which had been paid to his father. While so acting, John T. made many telephone calls to his fellow plaintiffs in this litigation during which this lawsuit and matters related thereto were discussed. ANI paid the telephone bills resulting from these calls.

The Bulletin Group and its directors, after obtaining a legal opinion they could do so, sought to control all of ANI's affairs, including the nomination and election of the Herald Group's vice-president, its 3 directors, and the appointment of the Herald's editor. They offered amendments to the articles of consolidation and by-laws providing all the corporation's business and affairs could be transacted by simple majority vote of ANI's stockholders or its directors. These amendments would have effectively extinguished the Herald Group's preemptive right to publish the Herald. This declaratory judgment suit followed.

Further facts are set forth, as necessary, in the later portions of this opinion.

## DISCUSSION AND DECISION

### I. *Standard of Review*

██ Both groups accept the trial court's findings of fact without challenge in this appeal. Thus, the evidence as embodied in those findings is without conflict. In such case, we will affirm the trial court unless its judgment is contrary to law, that is, the evidence reasonably leads to but one conclusion and the opposite conclusion has been reached below. *Andis v. Newlin* (1982), Ind., 442 N.E.2d 1106; *Chico Corp. v. Delaware-Muncie Bd. of Zoning Appeals* (1984), Ind.App., 466 N.E.2d 472; *Ridenour v. France* (1982), Ind.App., 442 N.E.2d 716.

### II. *The Original Consolidation*

██ No corporation can exist without the grant or consent of the sovereign: the power to create corporations is one of the attributes of sovereignty. A corporation

can be created and exist only by virtue of statutory authority, and by that authority alone. *Indiana Bond Co. v. Ogle* (1899), 22 Ind.App. 593, 54 N.E. 407, 408. A corporation is a creature existing not by contract, but by statute. It is governed by the law which created it, and by those legislative enactments which in terms apply to it. *Ohio Insurance Co. v. Nunnemacher* (1860), 15 Ind. 294, 296. There may be a contract among individuals to enter into a corporation; but when the contemplated corporations comes into existence, the charter, not the contract, determines their rights. Its provisions are supreme. *Nunnemacher*, 15 Ind. at 295–296.

■■■ When a corporation is organized under general law, the charter of the corporation consists of its articles of incorporation and the laws applicable thereto. The State's constitutional and statutory law become part of its articles of incorporation. *Westport Stone Co. v. Thomas* (1911), 175 Ind. 319, 94 N.E. 406, 410. The relation between a corporation and its stockholders is one of contract in which the articles of incorporation, by-laws, provisions of the stock certificate, and pertinent statutes are embodied. The rights, interests, and obligations of the stockholders arise out of such contract. They are defined and established by the articles of incorporation and applicable laws. *Berger v. Amana Society* (1959), 250 Iowa 1060, 95 N.W.2d 909, 70 A.L.R.2d 830, 838; *Crocker v. Waltham Watch Co.* (1944), 315 Mass. 397, 53 N.E.2d 230, 233; 18 AM.JUR.2D, *Corporations* ¶ 481. With these principles in mind, we turn to the case at hand.

ANI was the new corporation which resulted from the consolidation of two Indiana corporations, Bulletin Printing and Manufacturing Company, Inc. and the Herald Publishing Company, Inc. on September 29, 1949. This consolidation was authorized under those provisions of the IGCA relating to the merger or consolidation of corporations, currently codified as IND.CODE 23–1–5–1 to 23–1–5–8.[1]

Consolidation in 1949 was, and still is, a simple procedure under our corporation act. The *sine qua non* thereof is the original agreement to consolidate. It must be adopted by the boards of directors of the consolidating corporations and approved by the shareholders of each corporation. This is the first and crucial step on the road to consolidation, *cf.* IC 23–1–5–3. Thereafter, articles of consolidation embodying the agreement are filed with the secretary of state and a certificate of consolidation issued. At that time or within 30 days after the articles are filed, the new corporation becomes a legal entity, *cf.* IC 23–1–5–4.

Tracking the IGCA provisions regarding what may be included within the articles of consolidation, we find IC 23–1–5–5(f) first provides

... in case of consolidation, *the statements set forth in the agreement of consolidation* as provided in subparagraph (4) of paragraph (a) of [IC 23–1–5–3] of this act *shall be deemed to be the articles of incorporation of the new corporation* formed by such consolidation. (Emphasis supplied).

IC 23–1–5–3(a) then provides the articles of consolidation shall set forth

. . . . .

(4) with respect to the new corporation, all the statements required by [IC 23–1–3–2] of this act to be set forth in original articles of incorporation for corporations formed under this act;

and, finally, IC 23–1–3–2, in appropriate part, reads

[The articles of consolidation shall set forth] the following:

. . . . .

(12) Any other provisions, consistent with the laws of this state, *for the regulation of the business* and *conduct of the affairs* of the [new] corporation, and

---

1. The current provisions of the IGCA regarding consolidation are the same as they were in 1949 with minor exceptions of no moment in this appeal. Thus, we cite the Code for handy reference. For notes as to amendments, *see* Title 23 *Business and Other Associations,* West's Annotated Ind.Code 1979, pp. 254, 257.

*creating, defining, limiting or regulating the powers of the corporation, of the directors* or of the shareholders of *any class* or classes of shareholders. (Emphasis supplied).

Under these IGCA sections, the original consolidation agreement as embodied in the new corporation's articles of consolidation, may include provisions governing the new corporation's relations with its shareholders, the manner in which its board of directors is to function, the manner in which its business is to be conducted, and all other matters which lawfully may come within the articles' purview. It is the supreme document. All the new corporation's affairs and documents are subservient to its lawful directives, so long as the new corporation exists as a legal entity, in ANI's case in perpetuity.

### A.

### Intent of Parties

■■■ In contract law, the intention of the parties controls our decisions regarding the substance of agreements, and that intention is expressed by the clear language of the contract. *Jenkins v. King* (1946), 224 Ind. 164, 65 N.E.2d 121, 123; *McEntire v. Indiana National Bank* (1984), Ind. App., 471 N.E.2d 1216, 1221; *Citizens Bank & Trust Co. of Washington v. Gibson* (1984), Ind.App., 463 N.E.2d 276, 279, *trans. pending; R.R. Donnelley & Sons Co. v. Henry-Williams, Inc.* (1981), Ind. App., 422 N.E.2d 353, 356. If the language of a contract is unambiguous, construction thereof is a matter of law for the court. *McEntire*, 471 N.E.2d at 1222; *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379, 1383. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation. If the parties' intention is discernible from the written contract and the unambiguous terms of the contract are conclusive regarding the parties' intentions, then the court must give it effect. *Orkin Exterminating Co. v. Walters* (1984), Ind.App., 466 N.E.2d 55, 60; *Ethyl Corp. v. Forcum-Lannom Assoc's., Inc.* (1982), Ind.App., 433

N.E.2d 1214, 1217–1218. A court will not construe an unambiguous contract. Where the terms of a contract are clear, the court merely applies its provisions. *Ft. Wayne Cablevision v. Indiana & Michigan Electric Co.* (1983), Ind.App., 443 N.E.2d 863, 866; *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 846. Unambiguous language is conclusive upon the parties and the courts. We must effectuate the intention of the parties. *Walters*, 466 N.E.2d at 60; *Piskorowski*, 403 N.E.2d at 844.

The intent of the parties here is plain and unambiguous. The agreement as contained in the articles unequivocally provides at Section (13)

The "Bulletin" and the "Herald" *shall continue* to be printed, published and distributed *as before the consolidation;* for this purpose, each shall have, retain or change its own editorial, political and community programs and *neither shall interfere with or restrict the other* as to the above mentioned objects. For this purpose, the "Bulletin" and the "Herald" shall each have *the exclusive right* to employ its respective *editors,* managers and their necessary assistants *without interference from the other* except that salaries and general duties shall be [in] fair proportion, one to the other. (Emphasis supplied). (R. 227).

Later, they provide in Section (15)

It is the desire intention˙ and agreement that the two different newspapers, herein described as First Party [the Bulletin Corp.], and Second Party [the Herald Corp.], *shall continue* to print, publish and circulate *as before this consolidation* and to *further* establish *this right,* it is agreed:

(a) That the present three members of the Board of Directors chosen from the stockholders of First Party *shall not interfere by vote or otherwise with the printing or publishing* of a morning newspaper under the name and title *of the "Herald"* and

(b) That the present members of the Board of Directors chosen from the

stockholders of the Second Party *shall not intefere* (sic) *by vote or otherwise with the printing or publishing* of an evening newspaper under the name and title *of the "Bulletin",* and

(c) That these provisions shall be *obligatory and binding on any and all successors* to the Board of Directors of Third Party [ANI]. (Emphasis supplied). (R. 230).

To state the obvious, neither Bulletin nor Herald shareholders could nominate or vote upon the directors of the other group's corporation nor could their directors participate in the conduct of the other's affairs prior to the consolidation.

 In that light, the articles express the clear intent the Bulletin Group is to control the Bulletin's affairs exclusively, and the Herald Group the Herald's through each group's representatives on the ANI board of directors, or through each group's direct votes where applicable, including the nomination and election of its own representatives to the ANI board of directors. Further, neither group's directors are to interfere by vote or otherwise with the other's newspaper in its day to day operations. That intent is the supreme mandate governing the conduct of ANI's business and affairs. Such restrictions and rights in a corporate charter are valid in states such as Indiana which permit them to be set out in the charter rather than in a statute. *Hampton v. Tri-State Finance Corp.* (1972), 30 Colo.App. 420, 495 P.2d 566, 52 A.L.R.3d 1125; *Krell v. Krell Piano Co.* (1920), 23 Ohio NPNS, *aff'd.* 14 Ohio App. 74; *General Inv. Co. v. Bethlehem Steel Corp.* (1917), 87 N.J.Eq. 234, 100 A. 347.

ANI adopted by-laws conforming to the agreement's mandate as soon as the new corporation became a legal entity. Article IV Section 8 thereof states

Since the Directors of this Corporation formerly were stockholders of the Bulletin Printing and Manufacturing Company, Incorporated of Anderson, Indiana, and of the Herald Publishing Company, Incorporated of Anderson, Indiana, and since the present membership of this

Board of Directors are divided as follows: Three from the first named and two from the second named corporations, it is agreed *that it is the law of this corporation* that (a) there shall *always* be directors *in the same proportion,* three from the former stockholders of the Bulletin Printing and Manufacturing Company, Incorporated or their successors in ownership and two from the former stockholders of the Herald Publishing Company, Inc., or their successors in ownership, and

(b) In the event of the death, resignation or disability of one or more of the Directors of this Corporation, the one or more persons appointed to fill the unexpired term of such vacancy, shall be from the group to which such Director shall have belonged, and

(c) Notwithstanding any other provisions to the contrary, *this particular section of these by-laws may not be changed except by the affirmative vote of ⅝ of all outstanding stock of this corporation.* (Emphasis supplied.)

Both groups substantially complied with these expressions of intent until the events giving rise to this litigation occurred.

### B.

### *Statutory Provisions*

 The Bulletin Group now asserts, however, the articles may be amended by simple majority vote to eliminate these provisions because IC 23–1–4–1 says

A corporation may amend [its] articles of incorporation *without limitation* so long as the articles as amended would have been authorized by this act as original articles, by complying with the provisions of sections [IC 23–1–4–2 to IC 23–1–4–5] of this article. (Emphasis supplied).

It correctly points out the term "articles" as used in this statute includes articles of consolidation, *cf.* IC 23–1–1–1(c). It then claims because the "without limitation" language of the quoted section is to be strictly construed against the articles, that provision nullifies the agreement's expressed in-

tent granting preemptive rights to each group to control its own newspaper. Again, we must track through several additional IGCA sections.

IC 23–1–4–2 through IC 23–1–4–4 unequivocally set forth the procedure for amendment of articles of incorporation. IC 23–1–4–2 provides

Every amendment shall first be proposed by the board of directors by *the adoption of a resolution* setting forth the proposed amendment and directing that it be submitted to a vote of *the shareholders entitled to vote in respect thereof* ... [at an annual] or special meeting of *the shareholders entitled to vote in respect thereof....* (Emphasis supplied).

IC 23–1–4–3 then provides in pertinent part

An amendment ... so proposed shall be submitted to a vote of the *shareholders entitled to vote in respect thereof* at an annual or special meeting ... and the proposed amendment shall be adopted upon receiving *the affirmative votes of at least a majority* (or such greater proportion as the articles of incorporation may require) of the outstanding shares entitled to vote in respect thereof. (Emphasis supplied).

and IC 23–1–4–4 in part provides

. . . . .

(b) As to all other proposed amendments, only the holders of the outstanding shares which *by the terms of the articles of incorporation are entitled to vote thereon* shall be entitled to *vote* in respect of such amendments. (Emphasis supplied).

███ The proscription against interference by Bulletin directors "by *vote* or *otherwise* with the printing or publishing ... of the 'Herald' " contained in Section 15 of the articles was made "obligatory and binding upon any and all successors" to

ANI's board of directors. The amendment here proposed would have interfered with publication of the Herald because it would have extinguished the Herald Group's preemptive right to publish the Herald. Thus, in the first instance, the Bulletin directors not only could not *vote* on such a proposed amendment to the articles, they could not even *offer* it for adoption by the board, as required by IC 23–1–4–2, the first step in the amendment procedure. Only the directors of the group to be effected by the amendment, here the Herald's, could offer and adopt such an amendment. Thus, the mere offer thereof by Bulletin directors, let alone its adoption by simple majority vote of the board, was *ultra vires* [2] and void.

Similarly, Section 13's mandate the two newspapers are to be printed, published, and distributed "as before the consolidation" would have prohibited the adoption of such amendment by simple majority vote of all ANI shareholders. Only stockholders owning Herald-generated stock could have voted thereon because the favorable voting of Bulletin-generated stock would have constituted an "interference" or "restriction" on the Herald Group's preemptive right to publish the Herald. A favorable majority vote of the Herald Group's stockholders would have been the condition precedent to lawful adoption of such an amendment since destruction of that group's preemptive rights were involved.

The Bulletin Group, however, next contends

... Indiana law makes no provision for separate approval of any amendments by "groups" of shareholders of a single corporation which has only one class of stock with no differences in voting rights.

Further we note the trial court, as part of finding of fact number 17 said

... lack of capacity or power may be asserted: (a) In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts ...

---

**2.** The Herald Group properly asserts an *ultra vires* theory, i.e., lack of corporate power or authority to amend the articles and by-laws in this action, since it is one by shareholders against the corporation. IC 23–1–10–4 reads in part

In addition to the above-quoted provisions of ANI's articles: ...

(2) Article I(4)G states that there is no division of ANI's shares into classes or kinds *so far as voting rights are concerned;* ... (Emphasis supplied).

We disagree with the Bulletin Group's argument, and find the evidence is contrary to the quoted portion of finding of fact number 17.

We have sufficiently addressed the import of IC 23-1-3-2(12). It clearly authorizes charter provisions "creating, defining, limiting or restricting the powers ..., of the shareholders of any *class* ... of shareholders." Because each group's shareholders are readily identifiable, the limitations vis-a-vis preemptive rights discussed above as to each group's voting rights contained in the agreement as embodied in the articles are lawful even though there is only one class of stock under the authority of this section.

As to the quoted portion of finding of fact number 17, I(4)G was a part of a printed articles of consolidation form prescribed by the Indiana Secretary of State. The printed portion thereof read in part

If the shares are to be divided into classes or kinds, a statement of the voting rights and powers, if any, of the shares of each class, and of each series if the shares of any class are to be issuable in series, including the extent, if any, to which the shares of each such class and series shall be entitled to vote on questions of merger, consolidation and the sale of all or of substantially all of the assets of the corporation.

In the space provided by the form for the answer, there appear the typewritten words

No Division[.]

When construing a contract on a printed form where there is apparent conflict, writing prevails over printing, handwriting over typewriting, and typewriting over printing. *State v. Scott Constr. Co.* (1931), 97 Ind.App. 652, 174 N.E. 429, 431. *Accord: Peoples Outfitting Co., Inc. v. General Electric Credit Corp.* (7th Cir.1977) 549 F.2d 42, 45; *Colonial Coach Manufacturing Corp. v. Home Ins. Co.* (7th Cir.1958) 260 F.2d 532, 534. Statutes and contracts are to be construed as a whole so as to give effect to each part thereof, if reasonably possible. *Edward Rose of Indiana v. Fountain* (1982), Ind. App., 431 N.E.2d 543, 545; *Barr v. State* (1980), Ind.App., 400 N.E.2d 1149, 1150; *Ind. Alcoholic Bev. Comm. v. State ex rel. Harmon* (1976), 171 Ind.App. 156, 355 N.E.2d 450, 454; 26 Ind. Law Encyclopedia Statutes § 122 (1958) as to statutes; *Ahlborn v. City of Hammond* (1953), 232 Ind. 12, 111 N.E.2d 70, 73; *Schrum v. Dalton* (1982), Ind.App., 442 N.E.2d 366, 369; *Jones v. City of Logansport* (1982), Ind. App., 436 N.E.2d 1138, 1143-1144, *reh. denied* 439 N.E.2d 666; 6 Ind. Law Encyclopedia *Contracts* § 116 (1958), as to contracts.

Here, the parties' typewritten words "No Division" simply meant ANI's stock was not to be divided into classes or kinds, there was but one class of stock to be issued. The printed section of I(4)G requires a statement of voting rights only where more than one class or kind of stock is to be issued by the new corporation. Because only one class of stock was to be issued here, no statement of voting rights at that part of the form was required by section I(4)G. Given this resolution, all the provisions within the four corners of the articles regarding voting rights and restrictions are in harmony, and effect is given to the intent of the parties throughout the instrument. *R.R. Donnelley & Sons Co.,* 422 N.E.2d at 356.

### III. *Derivative Action*

The Bulletin Group next argues the trial court erred when it determined this case is a derivative action warranting recovery of attorneys' fees and expenses by the Herald Group. It argues *Neese v. Richer* (1981), Ind.App., 428 N.E.2d 36 is inapplicable because "the plaintiff's action had uncovered and eliminated criminal activity by the defendant." That is incorrect, the *Neese* court made a contrary determination.

The plaintiff there had alleged fraud but the court found no fraudulent acts, only sloppy bookkeeping. However, the corporation there was ordered to pay accountants' and attorneys' fees because correction of the sloppy bookkeeping bestowed a nonpecuniary benefit upon the corporation warranting such assessment.

However, the *Neese* court at note 2 of its opinion did say

> For purposes of this appeal, we assume the action for accounting was a derivative action and not a personal action by Richer since the appellants have characterized this suit as a derivative action and have not contended otherwise in their appellate brief submitted to this court.

*Neese*, 428 N.E.2d at 39. Here, the Bulletin Group contends this action is personal to Herald Group shareholders because it seeks to protect and defend their alleged personal rights as shareholders. It does not seek relief benefiting the corporation, thus it is not a proper derivative action, Bulletin opines. We disagree.

 Generally speaking, the stockholders of a corporation for the purposes of all litigation growing out of the relations between the corporation and a third person, surrender their personal or individual entities to the corporation in which they are stockholders. It is only in exceptional cases that stockholders will be permitted to sue or defend a suit for and on behalf of themselves as stockholders of such corporation. Cases in which such suits are permitted are those

> ... in which appears one or more of the following conditions:
>
> "... (3) action by the board of directors, or a majority of them, in their own interest, and in a manner destructive of the corporation, or the rights of the other stockholders; (4) where a majority of the stockholders are illegally and oppressively pursuing a course in the name of the corporation, which is in violation of the right of the other stockholders, and can only be restrained by a court of equity."

*McFarland v. Pierce* (1896), 151 Ind. 546, 549, 45 N.E. 706, 47 N.E. 1; *First Merchants National Bank & Trust Co. v. Murdock Realty Co.* (1942), 111 Ind.App. 226, 39 N.E.2d 507, 512–513; *Marcovich v. O'Brien* (1916), 63 Ind.App. 101, 114 N.E. 100, 103; *Tevis v. Hammersmith* (1903), 31 Ind.App. 281, 282, 66 N.E. 79, 80, aff'd. 161 Ind. 74, 67 N.E. 672, and cases cited; *Green v. Felton* (1908), 42 Ind.App. 675, 84 N.E. 166, 168.

 As noted above, a simple majority of the board and the Bulletin Group were illegally and oppressively pursuing a course of action in the name of the corporation calculated to destroy the Herald Group's preemptive right to publish the Herald if carried to completion. Thus, this action is derivative in nature: one wherein a non-pecuniary benefit, that is, determination of the rights of Herald-generated ANI stockholders vis-a-vis the corporation and other stockholders, and the lawful manner in which ANI may conduct its business, was bestowed upon ANI by virtue of this lawsuit. *Neese*, 428 N.E.2d at 39–40. For that reason, the trial court properly determined this is a derivative action and ordered ANI to pay the Herald Group's costs and attorneys' fees herein.

## IV. *Attorneys' Fees*

Next the Bulletin Group asserts the trial court's award of $122,818.82 as expenses and attorneys' fees is contrary to law. It claims such award is excessive because

1. When the value of a non-monetary benefit to the corporation is compared with the attorneys' fees the same is excessive,

2. Recovery of attorneys' fees for time spent seeking the award thereof may not be assessed against the corporation,

3. Time spent on unsuccessful claims, contentions and legal theories may not be assessed,

4. Recovery for time spent on any non-derivative aspects of the litigation cannot be assessed, and

5. Attorneys' fees incurred after entry of judgment also may not be recovered.

These arguments are but a mere invitation to us to weigh the evidence on appeal. That we may not do so requires no citation of authority in support of that assertion. Only trial courts may do so.

■ A stockholder's derivative action is a suit in equity. The allowance of costs in a suit of equity is within the sound discretion of the trial court. The exercise thereof cannot be interferred with on appeal unless it is manifestly abused. *State ex rel. Neese, et al. v. Montgomery Circuit Court, et al.* (1980), 272 Ind. 495, 399 N.E.2d 375; *Neese*, 428 N.E.2d at 38–39. A shareholder's right to recover attorneys' fees and expenses of litigation in a shareholder derivative suit has been recognized in Indiana. *Neese*, 428 N.E.2d at 39; *Cole Real Estate Corp. v. Peoples Bank & Trust Co.* (1974), 160 Ind.App. 88, 310 N.E.2d 275, *trans. denied; Princeton Coal and Mining Co. v. Gilcrist* (1912), 51 Ind. App. 216, 99 N.E. 426.

■ On appeal, we will reverse a trial court's award of costs of litigation and attorneys' fees only where an abuse of the trial court's discretion is apparent on the face of the record. *Zebrowski & Associates, Inc. v. City of Indianapolis, etc. Public Utilities* (1983), Ind.App., 457 N.E.2d 259, 264; *Rice v. Rice* (1984), Ind.App., 460 N.E.2d 1228, 1231; *Williams v. Williams* (1984), Ind.App., 460 N.E.2d 1226, 1228; *Page v. Schrenker* (1982), Ind.App., 439 N.E.2d 694, 697; *McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148, 1152.

■ Our review of the record in this cause leads us to the firm conclusion the trial court thoroughly considered all aspects of this case as to its award of attorneys' fees and costs. We find no abuse of discretion in the amount of its award of attorneys' fees and costs herein to be paid by the corporation to the Herald Group.

### V. *Interim Editor's Salary and Expenses*

The Bulletin Group next argues ANI should recover the weekly salary paid to John T. Scott for his services as interim editor of the Herald from the time of his father's death until his removal as such by court order, in essence claiming he was an officious intermeddler who had not been duly appointed by ANI's board of directors. The trial court's finding number 103 quickly disposes of that argument.

■ The facts reveal although Scott was never appointed editor officially, the Herald, but for Scott's assuming that post after his father's death, would have been without an editor. Finding 103 determined Scott was qualified to serve as editor, performed services on behalf of ANI that were equivalent in value to those of his deceased father, and he was paid the same weekly salary as his father had been paid. The trial court correctly concluded a court order requiring Scott's salary and expenses to be repaid would be improper. An implied contract existed under these circumstances between Scott and ANI. To require repayment would constitute unjust enrichment. *First Valley Bank v. First Savings & Loan Ass'n. of Central Indiana* (1980), Ind.App., 412 N.E.2d 1237, 1244.

Finally, the Bulletin Group's argument it should be reimbursed for Scott's telephone calls charged to the corporation in the sum of $325.48 is at first blush *de minimus* when viewed within the scope of the dollar value of this litigation. However, we will address the subject.

■ In Finding 104 the court said in part

These telephone calls were principally directed among the plaintiffs and involved discussions held by them concerning their lawsuit in this cause.

Discussion among plaintiffs in this type of action from time to time is not only reasonable, it is essential to a proper prosecution thereof. That a portion of these discussions took place by telephone is neither unusual nor uncommon in this electronic age. Further, such discussions were prompted in the first instance by the illegal and *ultra vires* acts of the corporation and Bulletin Group directors and shareholders.

Thus, these costs were and are costs to be paid by ANI. However, the corporation has already paid them. It would be a useless exercise to require Scott to pay that sum to the corporation, then require him to petition the court for reimbursement therefor. Since this cost has been paid by ANI already, this matter should lay at rest where the courts find it. Thus, the trial court's conclusion of law number 34 and its judgment paragraph number 17 are contrary to law.

Because the preceding discussion fully disposes of this case, we find it unnecessary to address the alleged antitrust question.

## VI. *ANI Officers*

■ The Herald Group's directors have no preemptive right to name the ANI vice-president, however. While it argues custom and practice impliedly has amended the charter and by-laws to so provide, it cites no Indiana cases supporting that contention, only cases from foreign jurisdictions so stating. It attempts no showing the corporation laws of the states from which such cases arise are substantially the same as ours. Further, we decline the implied invitation to romp through that statutory forest making those comparisons on our own.

Because the charter does not spell out such preemptive right, it does not exist. ANI officers may be nominated by any director, come from any group, and be elected by simple majority vote of the ANI directors.

## VII. *Summary*

We summarize the various holdings of this opinion as follows:

1. ANI's charter includes the original agreement of consolidation as embodied in the articles of consolidation, the applicable provisions of the Constitutions of the United States and the State of Indiana, and the applicable portions of the IGCA.

2. ANI's charter is the supreme corporate document. It lawfully defines the voting rights and restrictions of the shareholders as to themselves and as to the corporation. It lawfully states the manner in which ANI and its board of directors shall conduct ANI's business.

3. This corporation's charter may be amended to modify or extinguish the preemptive rights of either group of shareholders to "print, publish and distribute" its newspaper "as before the consolidation" only if a majority of the directors or shareholders of the group whose rights are to be effected shall propose and adopt such an amendment to the articles of consolidation.

4. Neither group of shareholders is entitled either to nominate or vote for candidates for seats on ANI's board of directors attributable to the other group's seats thereon, nor may either propose or vote upon any matters affecting the "printing, publishing or distribution" of the other group's newspaper.

5. The directors elected to the board by one group may not propose or vote upon matters before the board effecting the "printing, publishing or distribution" of the other group's newspaper unless six-eights of all the ANI shareholders shall vote to amend the by-laws to so permit; provided, Section 15 of the articles is amended in like manner.

6. Because the articles are silent as to the manner in which ANI officers are to be nominated and elected, they may be elected by simple majority vote of the ANI directors, but the newspapers' editors, etc. are to be named by the group having the preemptive right to do so.

Affirmed in part, reversed in part, and remanded to the trial court for the entry of amended findings of fact, amended conclusions of law, amendment of the judgment, and for other action as necessary in conformity with this opinion.

MILLER, P.J., and YOUNG, J., concur.