McCAE MANAGEMENT CORPORATION, Successor-in-Interest to McCae II, Inc., an Indiana Corporation; McCae II, Inc., an Indiana Corporation d/b/a Scott Villa Health Care Facility, and Crane Health Care Center, Inc., an Indiana Corporation, Appellants (Plaintiffs Below),

v.

MERCHANTS NATIONAL BANK AND TRUST COMPANY OF INDIANAPOLIS, Appellee (Defendant/Counter-Claimant Below).

Crane Health Care Center, Inc., McCae II, Inc., David F. Crane, Donald F. Crane, F. Stephen Atwood and David F. McNamar, (Non–Appealing Counter–Defendants Below).

No. 30A04–8906–CV–228.

Court of Appeals of Indiana, Fourth District.

May 10, 1990.

---

Alan S. Brown, Ariane Schallwig Johnson, Locke Reynolds Boyd & Weisell, Indianapolis, James L. Lowry, Danville, for appellants.

Douglas B. King, Joseph R. Heerens, Wooden, McLaughlin & Sterner, Indianapolis, Michael J. Tosick, Greenfield, for appellee.

CONOVER, Judge.

Plaintiff–Appellant McCae Management Corporation, Successor–in–Interest to McCae II, Inc., an Indiana Corporation d/b/a Scott Villa Health Care Facility, and Crane Health Care Center, Inc., an Indiana corporation, (McCae) appeals the trial court's grant of summary judgment in favor of Defendant–Appellee Merchants National Bank and Trust Company of Indianapolis (Merchants) in this breach of contract action.

We affirm.

McCae presents the following restated issues for our review:

1. whether the trial court erred in determining the parties' loan documents clearly and unequivocally prohibited prepayment thus excluding extrinsic evidence and prohibiting prepayment as a matter of law, and

2. whether the trial court erred in determining Merchants was entitled to a yield maintenance fee.

In 1984 after negotiating with Merchants, McCae borrowed $2.285 million to build and operate two nursing homes, executing and delivering two promissory notes secured by real estate mortgages for $1 million and $1.285 million, respectively to Merchants. Later when McCae needed additional funds, it executed replacement promissory notes for the originals and amendments to the loan documents. These amendments stated references in the mort-

gages to the original notes would also apply to the new notes, and all other loan documents would continue to have the same force and effect as they had when the original notes were in force. Both replacement notes provided "there is no right to prepayment of any of the indebtedness hereunder." (R. 468). The new notes also contained acceleration clauses in the event of maker's default. The notes were payable "on or before" January 16, 1990, and May 1, 1995, respectively.

In 1986, McCae sold the two health care facilities, notified Merchants of the sale, and asked for payoff amounts on the outstanding loans. Merchants requested a "yield maintenance fee," phraseology nowhere appearing in either the notes, mortgages, or existing loan documents, of $339,569. McCae paid a reduced fee of $121,000 under protest and filed suit. It claimed in the trial court certain ambiguities in the existing documentation permitted it to introduce extrinsic evidence concerning the intent of the parties regarding these loans.

The trial court granted Merchants's motion for partial summary judgment. Merchants then dismissed its counterclaims.

McCae appeals.

Summary judgment is appropriate only in limited situations. Ind. Trial Rule 56 provides in part:

(c) *Motion and Proceedings Thereon.*

... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Trial Rule 5(D), together with any testimony show that there is *no genuine issue as to any material fact,* and that *the moving party* is entitled to judgment *as a matter of law* ....

(E) *Form of Affidavits—Further Testimony—Defense Required* ....

When a motion for summary judgment is made and *supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him.... (Emphasis supplied).

Thus, the moving party carries the burden of establishing:

(a) there is no issue as to any material fact, and

(b) he is entitled to judgment as a matter of law.

*Duvall v. Kroger* (1990), Ind.App., 549 N.E.2d 403, 405. The moving party must fulfill these two requirements before any burden shifts to the nonmovant. *Id.* The nonmovant may rest upon his pleadings until the moving party establishes no genuine factual issue exists. *Id.* If, however, the moving party successfully demonstrates no genuine issue exists, the nonmoving party must show the presence of such a fact to stave off summary judgment. *Fort Wayne Community Schools v. Fort Wayne Education Association, Inc.* (1986), Ind.App., 490 N.E.2d 337, 339; *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 134. In doing so, the nonmoving party may not merely rest upon his pleadings, but his response must set forth specific facts indicating an issue of material fact exists. *Popp v. Hardy* (1987), Ind. App., 508 N.E.2d 1282, 1284; *Fort Wayne Community Schools, supra,* at 340; T.R. 56(E). If the nonmovant fails to meet his burden, summary judgment may be granted. *Williams v. Lafayette Production Credit Association* (1987), Ind.App., 508 N.E.2d 579, 582, *reh. denied; Conard, supra,* at 134; T.R. 56(E).

When reviewing a grant of summary judgment motion, we stand in the shoes of the trial court. *Duvall, supra.* All evidence must be construed in favor of the nonmovant and all doubts as to the existence of a material issue must be resolved against the movant. *Penwell v. Western & Southern Life Ins. Co.* (1985), Ind.App., 474 N.E.2d 1042, 1044. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Board of Aviation Commissioners of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

Summary judgment is not a substitute for a trial to resolve factual disputes. Though the trial court may believe the nonmovant will be unsuccessful at trial, summary judgment should not be granted where material facts are disputed or conflicting inferences arise. *Duvall, supra.*

McCae contends the trial court erred in concluding the parties' loan documents clearly and unequivocally prohibited prepayment of the loans. McCae maintains the documents contain language permitting prepayment of the loans on or before the maturity dates. Thus, McCae alleges, a genuine issue of fact exists regarding the parties' intent, and extrinsic evidence was admissible to show their intent. Thus, McCae argues, the trial court erred by not admitting such evidence and summary judgment was inappropriate. We disagree, finding the contract unambiguous.

▉▉▉ The intention of parties to a contract is to be determined from the four corners of the document. *Estate of Saemann v. Tucker Realty* (1988), Ind.App., 529 N.E.2d 126, 129, *trans. denied.* It is expressed by the clear language thereof. *Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477 N.E.2d 553, 559, *reh. denied, trans. denied.* It is the duty of the court to interpret a contract so as to ascertain the intent of the parties. The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes them to be conflicting. *R.R. Donnelley & Sons, Co. v. Henry–Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353, 356.

▉▉▉ A written contract is presumed to embody the parties' entire agreement and merge within it all prior negotiations. *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.* (1984), Ind. App., 459 N.E.2d 420, 422. So long as two or more instruments are part of the same transaction, different execution times will not prohibit instruments from being construed together. *Ruth v. First Federal Sav. and Loan Ass'n. of LaPorte County* (1986), Ind.App., 492 N.E.2d 1105, 1107.

▉▉▉ In absence of ambiguity, it is not within the function of the courts to look outside the instrument to arrive at the intention of the parties. *Kincaid v. Lazar* (1980), Ind.App., 405 N.E.2d 615, 620. Words of particular meaning will control general terms where both cannot stand together. *Fineberg v. Clark* (1965), 137 Ind. App. 528, 209 N.E.2d 528, 534, *reh.. denied,* 137 Ind.App. 528, 210 N.E.2d 260. In most cases, construction of a written contract is a question of law for the court, with summary judgment being particularly appropriate. But, if reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate. However, if the ambiguity arises not because of extrinsic facts but by reason of the language used, construction of the ambiguous contract is a question of law for the court. *Ancich v. Mobil Oil Corp.* (1981), Ind.App., 422 N.E.2d 1320, 1322. If the language of the contract is unambiguous, construction of the contract is a matter of law for the court. *Scott, supra,* at 559. When construing a printed form contract, where there is apparent conflict, writing prevails over printing, handwriting over typewriting, and typewriting over printing. *Scott, supra,* at 562.

▉▉▉ Here, the mortgage regarding the first property contained the following language as to the payment due date, "... due and payable on or before January 16, 1990...." The promissory note and replacement promissory notes conspicuously stated there was no right of prepayment. Additionally, the mortgage provided, "Merchants Mortgage Corporation shall have the exclusive right to refinance the Note."

The original promissory note and mortgage were prepared and repayment scheduled before completion of the project. The McCae note and mortgage, executed on January 16, 1984, provided it matured "... on the first day of the sixtieth (60) month following the month in which the Rate Conversion Date occurs...." The "Rate Conversion Date" was specified as "... the earlier of (i) January 1, 1985 and (ii) the date of a written completion certificate from Merchants...."

The indefinite rate conversion date rendered the due dates indefinite. However, the note required payment in full five years from the earlier of January 16, 1985 (i.e.

January 16, 1990) or the completion of construction. Thus, if construction was complete prior to January 16, 1985, the note would be properly due and payable prior to January 16, 1990. Thus, the provisions may be harmoniously construed.

Further, the same analysis holds true for the replacement notes. They contained the definite maturity dates of February 1, 1990 and May 1, 1995 respectively. Therefore, the notes gave Merchants the contractual right to receive payments of principal and interest over the pre-determined length of the loans. They did not provide the right to prepay.

McCae next contends the trial court erroneously found Merchants did not breach its contract with McCae by refusing to accept prepayment absent a yield maintenance fee. Further, McCae maintains even the yield maintenance fee it paid under protest was not warranted since it was not mentioned in any of the loan documents. Thus, McCae posits, Merchants was not entitled to a yield maintenance fee. We disagree.

Having found no Indiana cases dealing with prepayment penalties as here attempted, we turn to other authority for guidance. In *Matter of LHD Realty Corp.* (7th Cir. 1984), 726 F.2d 327, 330, the court stated:

> [p]repayment premiums serve a valid purpose in compensating at least in part for the anticipated interest a lender will not receive if a loan is paid off prematurely. Among other things, a prepayment premium insures the lender against loss of his bargain if interest rates decline. Accordingly, reasonable prepayment premiums are enforceable. (Citations omitted).

Although a prepayment premium clause existed in the mortgage document in the *LHD* case, the above language is instructive.

In *Houston North Hospital Properties v. Telco Leasing, Inc.* (5th Cir.1982), 680 F.2d 19, *aff'd on reh.*, 688 F.2d 408, Telco made two loans to Houston. Later, Houston sought to prepay, but Telco refused to accept the tender absent a prepayment fee. Houston paid the fee, then sued to recover it. The Fifth Circuit affirmed the district court's order of summary judgment in favor of Telco, stating:

> The original loan agreement, as correctly interpreted by the district court, did not require Telco to accept prepayment. When Houston approached Telco about a modification of those agreements, it was not wrongful for Telco to seek an agreement on its own terms. Indeed, Telco would have been within its contractual rights had it refused to release the second lien on any terms whatsoever.

*Id.*, at 22.

When McCae sought to prepay, it was attempting to vary the terms of the previously existing agreement. In essence, it was negotiating a new contract which would deprive Merchants of the interest it was to receive as consideration for making the loans McCae sought at the time. Clearly, Merchants was entitled to negotiate for and receive a "yield maintenance fee" in lieu of the interest it would lose by prepayment.

Affirmed.

CHEZEM, P.J., and MILLER, J., concur.